**Lisa Ann COTTRELL, plaintiff,**

v.

**KAYSVILLE CITY, UTAH, a political subdivision and municipal corporation of the State of Utah, and Robert L. Nace, as an employee of said municipality, and Robert L. Nace, individually; Davis County Utah, a political subdivision of the State of Utah, and Mary Haddock Robb and Lorine Ann Kemner, individually and as employees of Davis County, Utah, defendant(s).**

**Civ. No. 91–NC–95B.**

United States District Court, D.Utah, N.D.

Sept. 24, 1992.

George K. Fadel, Bountiful, for plaintiff.

Dale J. Lambert, Karra J. Porter, Salt Lake City, Gerald E. Hell, Melvin C. Wilson, Farmington, for defendants.

## MEMORANDUM DECISION AND ORDER

BENSON, District Judge.

On September 2, 1992, a hearing was held on defendants Kaysville City and Robert L. Nace's Motion for Summary Judgment before the Honorable Dee Benson. George K. Fadel represented the plaintiff. Karra J. Porter represented the defendants Kaysville City and Robert L. Nace. Gerald E. Hess represented defendants Davis County, Mary Haddock Robb and Lorine Ann Kemner.

## BACKGROUND

On July 27, 1990, Kaysville police officers received from the Davis County dispatcher a notice of a civilian telephone complaint of a possible driving under the influence violation. The report described the driver as a young woman driving a red and black Chevrolet Blazer on Green Road, Fruit Heights, Utah. The description included the license plate number of the vehicle. Kaysville City Police Officer David Quinley responded to the dispatch, and found the vehicle still on Green Road. Officer Quinley noticed that the vehicle was being driven erratically with unusual stops and driving at a very slow speed.

Officer Quinley started following the vehicle. The vehicle continued on Green Road, turned onto Country Road and stopped in a church parking lot. The officer stopped his vehicle behind the plaintiff's vehicle.

Because of the erratic driving which he personally observed and the report of the citizen complaint, Officer Quinley suspected that the plaintiff was driving under the influence. The officer asked the plaintiff if she was under the influence of any drugs or alcohol. She told him she had a prescription for phenobarbital, but she had not taken any of the drug that day. The officer also noted that the plaintiff's eyes were very dilated and her speech pattern was slurred and erratic.

Officer Quinley began giving the plaintiff field sobriety tests. Soon thereafter Officer Nace arrived on the scene and completed the tests. The officers state in their affidavits that the plaintiff failed three of the tests and refused to take the fourth. In her affidavit, plaintiff asserts that she did not fail the first two tests, the walking heel-to-toe test and the one-leg stand test. The third test was the Horizontal Gaze Nystagmus which she does not dispute that she failed. She refused to perform the fourth test which required her to look into the officer's eyes. She explained to the officers that she belonged to a group in high school that thought it was disrespectful to look someone directly in the eye. The plaintiff does not dispute that she was driving erratically, speaking erratically, or that her eyes were glassy and dilated.

Based on the failure of the tests, the irregular speech, dilated and glassy eyes, the initial citizen complaint, the plaintiff's erratic driving patterns, and the officers' other observations of the plaintiff, the officers determined that the plaintiff was driving under the influence and placed her under arrest.

Plaintiff was transported to the Davis County jail where she consented to a blood test. Thereafter she was booked into the jail and subjected to a visual strip search by female jail personnel. For the purposes of this motion, the court assumes as true the plaintiff's version of the facts surrounding the strip search. Once at the jail, the plaintiff asserts that Officer Nace told the two women jailers to conduct a strip search. One of the women told Officer Nace that a strip search was not necessary.

Officer Nace told them to do it anyway. The plaintiff was later released on bail.

## DISCUSSION

The plaintiff asserts in her complaint that the strip search violated her Constitutional rights under the Fourth Amendment of the United States Constitution and that defendants are liable to her under 42 U.S.C. § 1983. The defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure asserting there are no genuine issues of material fact. While there are some facts in dispute, the court finds that those facts are immaterial, and based on the undisputed facts, summary judgment is appropriate as a matter of law.

In order to determine whether or not the strip search of the plaintiff violated her Constitutional rights, the court must determine whether the stop of her vehicle was proper, whether her arrest was legal, and whether or not the search was appropriate.

### 1. The Stop of the Plaintiff's Vehicle

■ To make an investigatory stop of a vehicle, an officer must have a reasonable suspicion that the person is committing a crime. *United States v. Corral*, 899 F.2d 991 (10th Cir.1990). "An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to a reasonable suspicion." *Id.* at 993–994, (quoting *United States v. Espinosa*, 782 F.2d 888 (10th Cir.1986)).

Officer Quinley has articulated facts in his affidavit which give rise to a reasonable suspicion that the plaintiff was committing a crime. The plaintiff has not disputed any of those particular facts. Officer Quinley received a report of a vehicle being driven erratically with the possibility that the driver was under the influence of drugs or alcohol. Officer Quinley located the vehicle driven by the plaintiff and observed the plaintiff driving very slowly and erratically, indicating to Officer Quinley that she might be under the influence of alcohol or drugs. When the plaintiff stopped in the parking lot of a church, Officer Quinley

was justified in approaching the vehicle to determine the reason for the plaintiff's erratic driving behavior. These facts are undisputed and must be taken as true. It is clear Officer Quinley had a reasonable suspicion to suspect that the plaintiff was driving under the influence of drugs or alcohol and was justified in stopping her.

### 2. The Arrest of the Plaintiff

■ Next, the court must determine whether or not the officers at the time of the arrest were justified in arresting the plaintiff for driving under the influence. The court must decide whether the officers had probable cause to make the arrest. "Probable cause exists when the facts and circumstances known to the officer would lead a prudent person to believe an offense had been committed." *United States v. Pollack*, 895 F.2d 686, 691 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 520, 112 L.Ed.2d 532 (1990), (citing *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959)).

The court may consider only those facts which are not in dispute to determine whether or not Officers Quinley and Nace had probable cause to arrest the plaintiff. First, there is the behavior Officer Quinley observed prior to stopping the plaintiff's vehicle which is discussed above. In addition, the plaintiff admits in her affidavit that she failed one field sobriety test and refused to take another. The officers also observed that the plaintiff's eyes were glassy and her speech was slurred. The plaintiff denied that she had consumed any drugs or alcohol although she admitted that she had a prescription for phenobarbital. All of these factors taken together could lead a reasonable officer to conclude that the plaintiff was driving under the influence of either alcohol or drugs, including prescription drugs. Because the officers did not smell alcohol on the plaintiff's breath it was reasonable for them to conclude that the plaintiff was under the influence of drugs. Therefore, the officers had probable cause to arrest the plaintiff.

### 3. The Propriety of the Strip Search

Finally, the court must determine whether or not the strip search conducted at the jail violated the plaintiff's Constitutional rights. The United States Supreme Court has held that strip searches do not necessarily violate the Fourth Amendment prohibition against unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). The Court stated a test for reasonableness with respect to strip searches as follows:

> requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884. While *Bell v. Wolfish* addressed strip searches involving post-conviction prisoners in a correctional facility, the same Fourth Amendment test for reasonableness applies to pretrial detainees in a detention facility such as the Davis County jail.

■ In order to determine the propriety of the search, this court must determine whether or not the strip search of the plaintiff was reasonable under the circumstances. In order to make this determination, the court must balance the need for the search with the need for protecting the plaintiff's personal rights. The Tenth Circuit Court of Appeals has held that an arrest on a bench warrant issued on a speeding ticket did not justify a strip search. *Hill v. Bogans*, 735 F.2d 391 (10th Cir.1984). The court held that an arrest on an outstanding speeding ticket did not give rise to circumstances which would indicate that a person might be possessing either a weapon or drugs. *Id.* at 394. In *Hill*, the Tenth Circuit relied on *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). In *Logan,* the Fourth Circuit Court of Appeals found that a strip search was unreasonable when a person was arrested on a charge of driving while intoxicated. Logan was arrested on an alcohol offense.

The Fourth Circuit found that her offense was not one "commonly associated by its very nature with the possession of weapons or contraband." *Id.* at 1013. Furthermore, Logan was held at the jail for one and one-half hours without even a pat-down search, and she was not detained with the general jail populations.

This case differs from both *Hill* and *Logan*. The court has already found that it was reasonable for an officer in Officer Nace's position to believe that the plaintiff was under the influence of drugs. There was no smell of alcohol on her breath, and her actions indicated that she was probably under the influence of drugs. Because the incident involved the possible possession of drugs, and no drugs were found in the plaintiff's vehicle, it was reasonable for an officer to assume that the plaintiff may have drugs concealed somewhere on her body.

Furthermore, since the plaintiff was booked into the county jail with the rest of the jail population, it was reasonable for the jail personnel to search for drugs prior to placing the plaintiff in the general jail population. It is the policy of the Davis County jail to strip search any jail inmate booked on a drug related offense. Not only was the strip search of the plaintiff justified, it was conducted as unobtrusively as possible by female jail personnel in a private room. Plaintiff has admitted that the female jailers were sympathetic to her situation.

Accordingly, the court finds that it was reasonable for an officer in the position of Officer Nace to determine that a strip search was appropriate. Even assuming as true the allegation that Officer Nace insisted on a strip search when the other jailers believed it was unnecessary, from the circumstances then existing, an officer in Officer Nace's position was justified in determining that a strip search was proper.

Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," *Scott v. United States*, 436 U.S. 128, 136 [98 S.Ct. 1717, 1723, 56 L.Ed.2d 168] (1978), and not on the officer's actual state of mind at the time the challenged action was taken. *Id.* at 138 and 139, n. 13 [98 S.Ct. at 1723 and 1724, n. 13].

*Maryland v. Macon*, 472 U.S. 463, 470–471, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985). Under the circumstances of this case, the search was reasonable. Therefore, the strip search of the plaintiff did not violate the Fourth Amendment of the Constitution.

Moreover, when a pretrial detainee is placed in the general jail population, the jail personnel must be aware of the possible concealment of contraband or weapons. The United States Supreme Court held in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), that the "Fourth Amendment prescription against unreasonable searches does not apply within the confines of the prison cell." *Id.* at 526, 104 S.Ct. at 3200. The court certainly sees a difference between a convicted prisoner and an arrestee. Nonetheless, some of the concerns of prison personnel also apply to jail personnel. Jailers "must be ever alert to attempts to introduce drugs and other contraband into the premises." *Id.* at 527, 104 S.Ct. at 3200. The Davis County jail, as any other prison facility, is concerned with the introduction of drugs into the general jail population. Thus, it is reasonable that whenever an objective jailer or officer has reason to believe that contraband or weapons might be concealed on an inmate, such as the plaintiff, a strip search is justified to prevent the weapons or contraband from entering the general jail population.

## CONCLUSION

Based on the foregoing, defendants Kaysville City and Officer Nace's Motion for Summary Judgment is GRANTED. In addition, for these same reasons, defendants Davis County, Mary Haddock Robb and Lorine Ann Kemner's oral Motion for Summary Judgment is also GRANTED.

IT IS HEREBY ORDERED